UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>COLBRAN, LLC<br><br>       Debtor | Chapter 11<br>Case No. 12-40727 -MSH |

**MEMORANDUM OF DECISION AND ORDER ON MOTION TO DISMISS**

Dedham Institution for Savings (the "Bank") has moved to dismiss Colbran, LLC's chapter 11 case on the grounds that it was not filed in good faith and that the bankruptcy court lacks jurisdiction to modify a debt to the Bank for which the Bank alleges Colbran is not liable. Colbran opposes the motion.

**Facts**

The relevant facts are undisputed. On August 12, 2003, Michael E. Walsh executed a document entitled "Declaration of Trust Establishing Shanry Realty Trust" (the "Declaration of Trust") (the "Trust") and recorded it in the Worcester District Registry of Deeds. Mr. Walsh is and at all relevant times has been the sole trustee of the Trust. The Trust is a Massachusetts nominee trust. As is typical for a nominee trust, the beneficiaries of the Trust retain the power to direct the actions of the trustee and to terminate the Trust at any time. The Declaration of Trust also provides for the trustee of the Trust to be free from liability for actions taken in good faith at the direction of the beneficiaries and for third parties who deal with the trustee to rely upon the trustee's certification as to his and the beneficiary's identities and his authority to undertake the

1

actions he is performing. The debtor, Colbran, a Massachusetts limited liability company,[1] was at all relevant times and continues to be, the sole beneficiary of the Trust.[2] Mr. Walsh is the sole member of Colbran.

On October 24, 2003 Mr. Walsh, in his capacity as trustee of the Trust, entered into a loan agreement with the Bank to borrow $585,000. The loan was evidenced by two promissory notes: one in the original principal amount of $325,000 and the other in the original principal amount of $260,000. The borrower's obligations under the notes were secured by mortgages and assignments of rents on property located at 9 Rosenfeld Drive, Hopedale, Massachusetts (the "Property"). At the time of the loan, title to the Property stood in the name of Mr. Walsh as trustee of the Trust and he signed the security documents on behalf of the Trust in his capacity as the trustee. Mr. Walsh disclosed to the Bank that Colbran was the sole beneficiary of the Trust. The notes were guaranteed by Mr. Walsh, in his individual capacity, and by Metropolitan Removal Company ("Metropolitan"), originally the sole lessee of the Property and now one of a number of lessees. Metropolitan is owned and controlled by Mr. Walsh.[3]

---

[1] I take judicial notice of Colbran's schedules of assets and liabilities and its statement of financial affairs. Although the statement of financial affairs identifies the debtor as a "Massachusetts limited liability corporation," the statute governing limited liability companies refers to these entities as "companies," not "corporations. The owners of a limited liability company are generally referred to as "members" as compared to "shareholders" of a corporation. MASS. GEN. LAWS ch. 156C § 2.

[2] At the hearing on the motion to dismiss, counsel for the Bank raised the possibility that Colbran might not be the only beneficiary of the Trust because the identity of the holders of the beneficial interest of a nominee trust are not recorded. The Bank knew Colbran to be the sole beneficiary of the Trust when the loan documents were executed and there is no basis in the record before me to assume anything has changed.

[3] In its pleadings, the Bank identified Metropolitan as wholly owned by Mr. Walsh. At oral argument the Bank's attorney represented that Mr. Walsh held a 90% ownership interest in Metropolitan. This inconsistency is not material to the issue before me.

Mr. Walsh, as trustee of the Trust, and the Bank entered into a loan modification agreement on September 2, 2004 whereby the Bank lent the Trust an additional $31,500. The first note was amended to reflect a principal balance of $342,500 and the second note was amended to reflect a principal balance of $274,000. Sometime thereafter, the $274,000 note was repaid in full from the proceeds of a loan from the United States Small Business Administration which now holds the second mortgage on the Property.

On June 17, 2004 Metropolitan borrowed $115,000 from the Bank. The Metropolitan note is guaranteed by the Trust and is secured by a third mortgage on the Property.

In November 2009 the Town of Hopedale took the Property for non-payment of real estate taxes for the years 2007 through 2009. The Town assigned its tax title to the Property to Tallage IMP, LLC ("Tallage") for a payment of $106,498.33, apparently the amount then due the Town.[4] Unpaid real estate taxes are continuing to accrue on the Property. As of January 12, 2012, an additional $53,059.09 in unpaid real estate taxes, incurred after the tax taking, was owed to the Town.

According to the Bank's memorandum supporting its motion to dismiss, it obtained an appraisal which valued the Property at $610,000 as of February 2, 2012. Colbran, in its schedules A and D filed in support of its chapter 11 petition, valued the Property at $650,000. By either measure of value, there is no equity in the Property.

The Bank scheduled a foreclosure sale of the Property on March 1, 2012. On February 29, 2012 Colbran filed its voluntary chapter 11 petition. Shortly thereafter the Bank filed its first

---

[4] There is no evidence in the record that either the Town or Tallage took any action to foreclose the Trust's right to redeem the Property from the tax taking. Such an action, if taken, would have cut off the Trust's ownership interest in the Property. *See* MASS. GEN. LAWS. ch. 60, § 62.

motion to dismiss on the grounds that Colbran did not file its case in good faith because it neither owned the Property nor was it liable on any of the debts to the Bank. Colbran then filed a motion to exercise its authority as beneficiary under the Declaration of Trust to terminate the Trust. Colbran's motion was allowed without opposition and Mr. Walsh, as trustee of the Trust, executed a deed, which has been recorded, transferring title to the Property from the Trust to Colbran. Based on the change in circumstances, the Bank's first motion to dismiss was denied without prejudice.

The Bank, has renewed its motion to dismiss on essentially the same grounds it presented in its prior motion, namely that the case was not filed in good faith and that the bankruptcy court lacks jurisdiction over any attempt to restructure the Bank's debt because Colbran is not an obligor on any of the debts secured by the Property and did not own the Property as of the petition date. According to the Bank, the Trust itself was ineligible to file bankruptcy[5] and record title to the Property stood in the name of Mr. Walsh as trustee of the Trust on the day Colbran filed its bankruptcy petition. The Bank further argues that any post-petition transfer of the Property to Colbran is fraudulent as having been without consideration and in any event is ineffective to confer jurisdiction on the court. The Bank concludes that Colbran's chapter 11

---

[5] A nominee trust's eligibility to be a debtor is the subject of some disagreement. *Compare In re Village Green Realty* Trust, 113 B.R. 105 (Bankr. D. Mass. 1990) (nominee trust that did not have its "beneficial interest divided into transferable certificates of participation or shares" as required by Mass. Gen. Laws. ch 182,§ 1 not an eligible debtor even if trust could show it was conducting business), *with In re Medallion Realty Trust,* 103 B.R. 8 (Bankr. D. Mass. 1989) (entity formed under nominee trust declaration where two trustees were also the only two beneficiaries and carried on business in the name of the trust permitted to be debtor but treated as a partnership) *and In re Gonic Realty Trust*, 50 B.R. 710 (Bankr. D.N.H. 1985) (nominee trust that conducts business is eligible to be a debtor).

4

filing was undertaken simply to delay the Bank's collection efforts and, therefore, was in bad faith.

## Discussion

Bankruptcy Code § 1112(b)(1), (11 U.S.C. § 101 *et seq*), authorizes a chapter 11 case to be dismissed or converted to chapter 7 "for cause." Section 1112(b)(4) enumerates sixteen circumstances constituting cause. The list is non-exclusive. *In re Gonic Realty Trust*, 909 F.2d 624, 626 (1st Cir. 1990); *AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.)*, 360 B.R. 398, 401 (Bankr. D.N.H. 2007). "Thus, in determining 'cause' for dismissal the court may consider other factors [in addition to those enumerated in § 1112(b)(4)] as they arise and use its powers to reach appropriate results in individual cases. The court, however, must exercise its sound judgment in reaching a determination and must ascertain that the decision is in the best interest of creditors." *Gonic*, 909 F.2d at 626-27 (internal citation omitted).

Before proceeding to consider the presence of cause to dismiss this case, a short digression is appropriate in order to allocate the parties' respective burdens. The issue of who has the burden of proof on a motion to dismiss under § 1112 became more complicated with the amendment of § 1112(b)(1) by the Bankruptcy Technical Corrections Act of 2010, PL 111-327, 124 Stat. 3557 (December 22, 2010), applicable to cases then pending as well as to those filed after December 22, 2010, the effective date of the act. *In re Hermanos Torres Perez Inc*., 2011 WL 5854929, at *1 (Bankr. D.P.R. Nov. 21, 2011). Prior to the Bankruptcy Technical Corrections Act, § 1112(b)(1) directed the court "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of the creditors and the estate, [to] convert a case under this chapter to a case under chapter 7 or dismiss

a case under this chapter, whichever is in the best interests of creditors and the estate, *if the movant establishes cause*." (Emphasis added). By its very language, the burden fell squarely upon the party seeking dismissal. The Bankruptcy Technical Corrections Act rewrote § 1112(b)(1) and among other things removed the highlighted language thereby creating ambiguity as to who has the burden of proof. Fortunately § 1112(b)(2) offers guidance. Section 1112(b)(2) provides a debtor with an escape from conversion or dismissal if the court identifies unusual circumstances that show conversion or dismissal is not in the best interest of creditors *and* "the debtor or any other party in interest" shows that the debtor can meet the circumstances set forth in §§ 1112(b)(2)(A) and (B).[6] Thus even after the Technical Amendments, the language of §§ 1112(b)(1) and (2) taken together suggests that initially the burden is on the movant to show

---

[6] Bankruptcy Code § 1112(b)(2) provides:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that--
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.

cause which the debtor must then rebut. *In re Clayton Prof'l Ctr., LLC,* 2012 WL 2153156, at *2 (Bankr. E.D.N.C. June 12, 2012) (movant has the burden of proof to establish cause for dismissal.); *Hermanos Torres Perez*, 2011 WL 5854929, at *1 (movant has initial burden to show cause by preponderance of the evidence); *In re Woodend, LLC*, 2011 WL 3741071, at *3 (Bankr. W.D.N.C. Aug. 24, 2011) (same); *In re Ashley Oaks Dev. Corp.*, 458 B.R. 280, 283 (Bankr. D.S.C. 2011) (same). Therefore the Bank bears the burden of proof as to cause for allowing its motion to dismiss.

In *Fields Station LLC v. Capitol Food Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner),* 490 F.3d 21, 24 (1st Cir.2007), the U.S. Court of Appeals for the First Circuit left unanswered the question of whether "cause" under § 1112(b) includes the lack of good faith.[7] Yet as the First Circuit recognized, even courts imposing a good faith filing requirement impress

---

[7] The First Circuit noted that:

> [C]ourts which endorse a good faith filing requirement primarily observe that it comports with the equitable roots of bankruptcy law, by ensuring, from the earliest stages of a bankruptcy case, that the debtor's genuine need for bankruptcy protection outweighs the burden and delay to creditors occasioned by the chapter 11 proceedings.… The courts which reject the requirement observe, inter alia, that: (i) § 1112(b) expressly provides adequate alternate mechanisms for weeding out bad faith chapter 11 petitions by expressly listing several criteria warranting dismissal for "cause" ( e.g., the debtor's failure to propose a viable chapter 11 plan in good faith), 11 U.S.C. § 1112(b)(4)(A)-(P), yet conspicuously omits mention of any good faith filing criterion; and (ii) "good faith" is too vague and amorphous a term to justify dismissal ab initio of a chapter 11 petition before the debtor has had a fair opportunity to propose and argue for the bona fides of its reorganization plan.…   In the same vein, Capitol Food notes that the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub.L. 109-8, 119 Stat. 23 (2005), recently included in the Code an explicit "good faith" definition in § 362(c)(3)(B), (C) (provisions to discourage multiple bankruptcy filings by same debtor within one-year period), but did not so amend § 1112(b).

*Capitol Food Corp.*, 490 F.3d at 24 n.1.

upon the proponent of the motion to dismiss the burden to make a *prima facie* showing that the case was filed in bad faith. *Id.   See also In re Miller*, 2009 WL 3398716, at *2 (Bankr. D. Mass. Oct. 16, 2009).

In considering a motion to dismiss a chapter 11 case, the bankruptcy court in *Miller* focused on whether there was a legitimate business purpose to be served by a debtor's filing a chapter 11 petition. *Id.* Another court found good faith in filing a chapter 11 case when a debtor had "assets, real debts and real creditors." *In re Cardi Ventures, Inc.*, 59 B.R. 18, 22 (Bankr. S.D.N.Y. 1985). The U.S. Court of Appeals for the Fourth Circuit adopted a good faith test that focuses on whether there is a legitimate possibility of reorganization. *Carolin Corp. v. Miller,* 886 F.2d 693, 700–01 (4th Cir.1989). If there is a legitimate, albeit somewhat remote possibility of reorganization, then at least in the Fourth Circuit, a chapter 11 case will not be dismissed even if the debtor was found to have filed the petition in bad faith. *Coleman v. Cmty. Trust Bank (In re Coleman)*, 426 F.3d 719, 728 (4th Cir. 2005). Other courts find the good faith requirement satisfied if there is simply an absence of bad faith. *Cedar Shore Resort, Inc. v. Mueller (In re Cedar Shore Resort, Inc.)*, 235 F.3d 375, 380 (8th Cir. 2000). In the Eleventh Circuit, the presence of subjective bad faith, without more, justifies dismissal of a chapter 11 case. *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393 (11th Cir. 1988). The U.S. Court of Appeals for the Third Circuit has adopted a totality of the circumstances approach to determining bad faith inquiring as to "where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d. 605, 618 (3rd Cir. 2009) (internal citations and quotation marks omitted). Courts in the Third Circuit examine such factors as whether: the case is a single asset case, there are few unsecured creditors,

8

there is no ongoing business or employees, the petition was filed on the eve of foreclosure, the case is essentially a two party dispute which can be resolved in pending state court action, the debtor has no cash or income, there is no pressure from non-moving creditors that would trigger a filing, the debtor has filed a previous bankruptcy petition, the debtor's prepetition conduct was improper, there is a possibility of reorganization, the debtor was formed immediately prepetition, the debtor filed solely to invoke the automatic stay, and the subjective intent of the debtor was improper. *In re Primestine Inv. Partners, L.P.*, 272 B.R. 554, 557 (D. Del. 2002).

Ultimately, whether this case was filed in good faith and whether the bankruptcy court has jurisdiction to oversee a reorganization of the debts secured by the various liens against the Property depend on whether the Property is property of the estate. No matter what standard for determining cause is adopted or how the standard is expressed, if the Bank is correct in its description of Colbran on the petition date as a "shell" that owned nothing and owed nothing, then this case should not be permitted to continue.

The framework for determining what property is property of the estate is found in Bankruptcy Code § 541. With exceptions not relevant here, Bankruptcy Code § 541(a)(1) defines property of the estate as "all legal and equitable interests of the debtor in property as of the commencement of the case." Nonbankruptcy law, in this case Massachusetts law, generally determines the nature and extent of the debtor's interest in property. *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 917-18, 59 L.Ed.2d 136 (1979).

The parties agree that the Trust is a nominee trust. Perhaps the definitive article on the nature of nominee trusts in Massachusetts describes a nominee trust as "an arrangement for holding title to real property under which one or more persons or corporations, pursuant to a

9

written declaration of trust, declare that they will hold any property they acquire as trustees for the benefit of one or more undisclosed beneficiaries." R. Birnbaum & J. Monahan, *The Nominee Trust in Massachusetts Real Estate Practice*, 60 MASS. L.Q. 364 (1976) (hereinafter "Birnbaum & Monahan"). Generally, the declaration of trust creating a nominee trust reserves to the trust beneficiaries the power to control and direct the actions of the trustee whose duties have been aptly described as "perfunctory." *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 893 (1st Cir. 1979).

The nominee trust form of ownership affords certain benefits, such as tax advantages, *id.*,[8] and the anonymity of its beneficiaries since the schedule of beneficial ownership of the trust need not be made public. *Morrison v. Lennett,* 415 Mass. 857, 861, 616 N.E.2d 92, 95 (1993). The use of a nominee trust to hold legal title to real estate allows title to be transferred easily because third parties can rely upon the authority of the trustees of record to execute deeds without conducting independent verification of the trustees' authority. *Stoll v. ESM Realty Trust (In re Stoll)*, 330 B.R. 470, 474 (Bankr. S.D.N.Y. 2005) (citing Birnbaum & Monahan at 365-66). The trustee or trustees need not gather signatures from multiple beneficiaries. In fact, transfer of legal

---

[8] The nominee trust itself has no taxable income and no gross income, and therefore owes no taxes and is not required to file a return. 26 U.S.C. §§ 501(a) and (c)(25), § 641(a) and Treas. Reg. § 1.6012-3(a)(ii). *See also Druker v. State Tax Comm'n*, 374 Mass. 198, 201, 372 N.E.2d 208, 210-11 (1978) (In affirming the tax board's holding that a 95% beneficiary of nominee trust was entitled to deduct losses on beneficiary's personal return, the court stated that "the taxpayer, as 95% beneficiary of the [trust], was in 'complete' or 'practical' control of the trust property, funds and income involved. The board therefore concluded, as matter of law, that 'the extreme degree of control exercised by beneficiaries in this case is clearly inamicable (sic ) with the concept of and vitiates the creation of a trust for purposes of taxation.' It followed that the losses of the [trust] were available as deductions on the taxpayer's personal tax returns.").

title to property held in the name of a trustee of a nominee trust can be accomplished without the need to execute a new deed since the "trust property can be sold by assignment of the beneficiaries' interest to the purchaser who can then replace the trustee." *In re Stoll*, 330 B.R. at 474. Birnbaum & Monahan posit that a purchase of the nominee trust's res by assignment of the beneficial interests in the trust may avoid triggering the due-on-sale clause in a mortgage and may side-step other restraints on the alienability of the trust's res. Birnbaum & Monahan at 366.[9] Whatever is the universe of its benefits, a nominee trust "is a form of ownership of real estate which is in considerable use in Massachusetts as a title-holding device." *Sylvia v. Johnson*, 44 Mass. App. Ct. 483, 484, 691 N.Ed.2d 608, 609 (1998) (citing *Penta v. Concord Auto Auction, Inc.,* 24 Mass. App. Ct. 635, 639, 511 N.E.2d 642 (1987)).

Because the beneficiaries of a nominee trust direct the actions of the trustee, the arrangement has been likened to a principal-agent relationship in which the "trustees are frequently seen as agents for the principals' convenience rather than as trustees in the more familiar fiduciary sense." *Apahouser Lock and Sec. Corp. v. Carvelli*, 26 Mass. App. Ct. 385, 388, 528 N.E.2d 133, 135 (Mass. App. Ct. 1988). And there is no doubt that the beneficiaries may freely exercise their right to terminate the trust at any time thereby taking legal title to the trust res as

---

[9] Although Birnbaum & Monahan recognize that it is not entirely free from doubt, they suggest that the transfer of the nominee trust's property by assignment of the beneficiaries' interests may avoid the need for deed stamps since no deed need be delivered.   The Massachusetts Department of Revenue, in Directive 95-5, issued May 9, 1995, disagrees, based upon its conclusion that "looking behind the nominee trust entity, the substance of a sale and assignment of beneficial interests in a nominee trust is to transfer incidents of ownership of the real estate to the new beneficial owners."   Thus, according to the MDOR, an assignment of a beneficial interest in a nominee trust triggers the provision in MASS. GEN. LAWS ch 64, § 1 that a writing that transfers ownership of real estate is subject to an excise tax.

11

co-tenants in proportion to their beneficial interests. *Johnson v. Holiday Inns*, 595 F.2d at 893 (quoting Birnbaum & Monahan).

Even absent the termination of a nominee trust, Massachusetts courts have looked behind record ownership to ascertain the real party in interest in a variety of circumstances. *Morrison*, 415 Mass. at 862, 616 N.Ed.2d at 95 (statutory cap on damages based on tort liability of charitable organization applied to all defendants in case in which property was owned by nominee trust whose 100% beneficiary was charitable corporation noting that in prior cases court ignored trustees' record ownership to impose liability directly on beneficiaries); *Bellemare v. Clermont*, 870 Mass. App. Ct. 566, 573, 870 N.Ed.2d 624, 630 (2007) (lawyer's secretary who was named as trustee of nominee trust as an accommodation to lawyer's clients was not the owner of the trust res for purposes of lead poisoning prevention and control statutes); *Cerny v. Wasserman*, 1993 WL 818652, at *2 (Mass. Super. Oct. 25, 1993) (plaintiffs' attorney disqualified in dispute over proceeds from sale of real estate sold by trustee of nominee trust when they had previously represented the 100% beneficiary of nominee trust because when the trust beneficiary became the beneficiary, "it essentially became the true owner of the trust, *and all of its assets*.") (emphasis added).

On a regulatory level, the Massachusetts Department of Revenue takes the position that the transfer of the beneficial interests in a nominee trust owning real estate is the equivalent of a transfer of title to the real estate for purposes of requiring the payment of deed stamps because "looking behind the nominee trust entity, the substance of a sale and assignment of beneficial interests in a nominee trust is to transfer incidents of ownership of the real estate to the new

12

beneficial owners." [10]

What interest the beneficiary of a nominee trust is deemed to hold depends on the particular facts presented but as has been repeatedly acknowledged, "in the bankruptcy context there has been a reluctance to permit the beneficiaries of nominee trusts to shield their personal assets from the reach of creditors through the use of nominee trusts." *In re Varrichione*, 354 B.R. 563, 567 (Bankr. D. Mass.2006) (citing *In re Eastmare Dev. Corp.*, 150 B.R. 495,500 (Bankr. D. Mass. 1993)).

In *Eastmare* as in the present case, the chapter 11 debtor owned 100% of the beneficial interest in a nominee trust. The trust held through its trustee record title to real estate located in Newburyport, Massachusetts. Prior to the bankruptcy filing, the trustee, acting as trustee of the nominee trust, signed a promissory note in favor of BayBank and granted the bank a mortgage on the Newburyport property. The debtor, among others, guaranteed the trust's obligations to the bank. Upon commencement of its bankruptcy case,[11] the debtor's attorneys notified the bank that the debtor's bankruptcy filing stayed the bank's scheduled foreclosure sale of the Newburyport property. The bank conducted the auction anyway.

In determining whether BayBank's actions violated the stay, Judge Feeney considered whether the debtor as the owner of 100% of the beneficial interest in the trust owned an interest in the Newburyport property and not just a personal property interest in the trust shares. Judge

---

[10] *See supra* note 9.

[11] As in this case, the debtor in *Eastmare* listed the nominee trust's name as a "d/b/a" of the debtor in the case caption. In *Eastmare* Judge Feeney found that the debtor never filed a business certificate with the Town of Newburyport that it was doing business using the trust's name. The record before me does not indicate whether Colbran filed such a certificate but this deficiency is not dispositive as to the Bank's motion.

13

Feeney undertook an exhaustive survey of existing law on nominee trusts that included a review of how courts outside of Massachusetts viewed the beneficiary's interest. She observed:

> Several courts from other jurisdictions that have examined trusts similar to the nominee trusts used in Massachusetts have held that under state law that interest is a personal property interest, not a real property interest. *See In re Ameriswiss Associates,* 148 B.R. 349 (Bankr.S.D.Fla.1992), *In re Ainslie and Belle Plaine Limited Partnership,* 145 B.R. 950 (Bankr.N.D.Ill.1992). Nevertheless, these courts have ruled that, under federal law, the beneficiaries are the equitable owners of the real property. *Id.*

*Id.* at 498. She noted that courts in the Seventh Circuit, elevating substance over form, sought to identify the party with the attributes of ownership of the trust res when evaluating Illinois land trusts, which are similar to Massachusetts nominee trusts. Judge Feeney concluded that:

> The time is ripe to reach the same conclusion here in Massachusetts with respect to nominee trusts. This Court's review of the case law suggests that a Massachusetts court would so hold in view of the beneficiaries' pervasive powers to control nominee trusts, including the ability to revoke the trust at will. *Accordingly, the Court rules that for purposes of section 541 of the Bankruptcy Code, the Debtor's estate includes equitable ownership of the nominee trust res.*

*Id.* at 503. (emphasis added).   *See also In re Lincoln North Assoc. Ltd. P'ship*, 155 B.R. 804, 806 n.1 (Bankr. D. Mass. 1993) ("Under *Eastmare,* the Debtor is deemed the beneficial owner of the Lincoln North property, not just the beneficial owner of all the interest in the Trust.").

In *In re Stoll*, the bankruptcy court treated a debtor's one-third beneficial interest in each of two Massachusetts nominee trusts as equivalent to a one-third ownership interest as a tenant in common with the non-debtor beneficiaries of the trusts' res and permitted a chapter 7 trustee to initiate adversary proceedings to sell the trusts's real estate under Bankruptcy Code § 363(h). *But see In re Varrichione,* 354 B.R. at 570 (debtor who was one of two trustees of nominee trust and one of four beneficiaries of the trust held only a personal property interest in the trust where the record did not indicate the debtor had ultimate control of the trust and piercing the trust veil

14

would not result in any benefit to the estate); *In re Simon*, 179 B.R. 1, 6 (Bankr. D. Mass. 1995) (debtor's less than 100% beneficial interest in a nominee trust was a personal property interest in the trust, not an interest in the trust's res).

I agree with Judge Feeney's holdings in *Eastmare* and *Lincoln North* that the bankruptcy of the owner of 100% of the beneficial interest in a Massachusetts nominee trust brings into the bankruptcy estate the debtor's beneficial interest in the trust res. Therefore, Colbran's bankruptcy filing both stayed the Bank's foreclosure sale of the Property and brought into the bankruptcy estate Colbran's beneficial interest in the Property.

Faced with the impending foreclosure sale, Colbran's choice to seek bankruptcy protection was not, in and of itself, an abuse of the bankruptcy process. The Bank stresses the anomaly of applying the automatic stay to the Property when Colbran had no independent liability to the Bank and thus no ability to restructure the Bank's debt in any plan of reorganization. But Colbran's initial beneficial interest and now fee interest in the Property have always been subject to the Bank's mortgage thereby creating a liability which may be treated in a plan of reorganization. *680 Fifth Avenue Assoc. v. The Mutual Benefit Life Ins. Co. (In re 680 Fifth Avenue Associates)*, 29 F.3d 95, 97 (2d Cir. 1994).   Furthermore, by operation of law, upon terminating the Trust, Colbran succeeded not only to the Trust's assets but also to the liabilities incurred by the Trust at Colbran's direction.   *Id. See also First Nat'l Bank of New Bedford v. Chartier*, 305 Mass. 316,322, 25 N.E.2d 733*, 736* (1940) ; *F.D.I.C. v. Porter*, 46 Mass. App. Ct. 241, 704 N.E.2d 1203 (1999) ("[B]eneficiary's liability in nominee trust may be limited by express language either in the trust agreement itself ... or the express language in the note or contract."). Finally, Colbran's assuming the liabilities of the Trust in no way affects the guarantees of Mr.

15

Walsh personally or of Metropolitan to the Bank. The Bank may freely pursue those guarantors as the automatic stay does not apply to them.

As to the Bank's argument that the transfer of title to the Property from the Trust to Colbran post-petition was fraudulent, the fact that the Colbran owned 100% of the beneficial interest in the Property on the petition date and that by operation of law the assets of the Trust automatically devolved to Colbran upon termination of the Trust, places the transfer beyond the scope of any applicable fraudulent conveyance law.

## Conclusion

For the foregoing reasons I find that Colbran's case was not filed in bad faith and that the bankruptcy court has jurisdiction over the Property and the debt to the Bank which is secured by the Property. Therefore, the motion to dismiss is DENIED.

SO ORDERED at Worcester, Massachusetts this 10th day of July, 2012.

By the Court,

Melvin S. Hoffman
Bankruptcy Judge

cc:    Whitton E. Norris III, Esq.
       Law Offices of Whitton Norris, LLP
       Dedham, MA
         Counsel for Dedham Institution for Savings

       Patrick J. Martin, Esq.
       Rosenberg & Weinberg.
       North Andover, MA

16

Counsel for Colbran, LLC